28 C.C.P.A.(Patents)

## In re PARSONS' APPLICATION
### (three cases).

### Patent Appeals Nos. 4362–4364.

Court of Customs and Patent Appeals.
Dec. 9, 1940.

Norbert E. Birch, of Washington, D. C. (R. G. Story, of Beacon, N. Y., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

These are appeals from decisions of the Board of Appeals of the United States Patent Office affirming decisions of the examiner rejecting all of the claims in each of the involved applications.

The application, serial No. 116,987 (filed December 21, 1936), involved in appeal No. 4362, is entitled "for Gelatin Product"; that in appeal No. 4363, serial No. 165,529 (filed September 24, 1937), is entitled "For modified Gelatin" and recites that it "is a continuation in part" of application, serial No. 116,987; that in appeal No. 4364, serial No. 134,187 (filed March 31, 1937), is entitled "For Ice Cream" and recites that it "is a division" of serial No. 116,987.

In the brief for appellant it is said:

"The issues in Appeal Nos. 4362 and 4363 are substantially identical, the subject matter of the appealed claims of the former being generic to the subject matter of the appealed claims of the latter. The issues of Appeal No. 4364 are patentably related to the issues involved in either of the other two appeals.

\*       \*       \*       \*       \*       \*

"\* \* \* the claims involved in Appeal Nos. 4362 and 4363 concern a modified gelatin product and its method of manufacture, in which there is added to gelatin liquor, an ester of a higher fatty acid and a polyhydric alcohol characterized by having one or more free alcoholic hydroxyl groups in the alcoholic part of the ester. The ester is thoroughly mixed and incorporated into the gelatin liquor and the mixture then is dried in any desired manner.

"Examples of the esters specifically recited in the claims involved in Appeal No. 4362 are monoacid or diacid esters of glycerol and a higher fatty acid.

"Examples of the esters specifically recited in the claims involved in Appeal No. 4363 are a diacid ester of a higher fatty acid and glycerol, or a monoacid ester of a higher fatty acid and diethylene glycol.

"The invention recited in the claims involved in Appeal No. 4364 concerns the method of preparing ice cream in which the aforesaid dried modified gelatin is employed, and too, the improved ice cream product resulting from that method."

At another point the brief states: "The appealed applications involve broadly the product and method of adding to gelatin liquor an ester of a polyhydric alcohol and a higher fatty acid characterized by having one or more free alcoholic hydroxyl groups on the polyhydric alcohol part of the ester, and thereafter drying the mixture, and the use of the dried gelatin ester product especially in the manufacture of ice cream."

A separate record was presented in each case and separate decisions rendered below. After the appeals had been taken to this court we granted consolidation for the purpose of briefing and oral argument. In the interest of clarity, however, we separate the cases for decision.

Appeal No. 4362—Serial No. 116,987

Ten claims numbered, respectively, 1, 2, 5, 6, 9, 11, 12, 15, 16, and 19, are involved in this appeal. Of these, claims 1, 2, 5, 6, and 9 are directed to a dried modified gelatin product, and claims 11, 12, 15, 16, and 19 to the process of manufacturing the product. Claims 1, 2, and 9 are generic product claims, and claims 5 and 6 are specie product claims. Claims 11, 12, and 19 are generic process claims, and claims 15 and 16 are specie process claims. As representative of these respective claims, we quote Nos. 1, 5, 11, and 15:

"1. Dried gelatin containing an ester of glycerol and a higher fatty acid having a free glyceryl alcohol group in the glyceryl part of the ester.

"5. Dried gelatin containing monoacid ester of glycerol and a higher fatty acid.

"11. The process of manufacturing an improved dried gelatin product which comprises adding to gelatin liquor and incorporating therewith a small percentage of glyceryl ester of a higher fatty acid having a free glyceryl alcohol group in the glyceryl part of the ester and thereafter drying.

"15. The process of manufacturing an improved dried gelatin product which comprises adding to gelatin liquor and incorporating therewith monoacid ester of glycerol and a higher fatty acid and thereafter drying."

All the claims were rejected by the examiner in the first instance as being aggregative. This ground was overruled by the board and is not involved before us. The second ground of his rejection, which was affirmed by the board, was in view of prior art, the reference patents being: Roth et al., 2,065,398, December 22, 1936; Schrader, Re. 20,361, May 11, 1937.

As has been indicated, the ultimate use of the dried gelatin product to which product and process of making same the claims now under discussion are limited is, as stated in appellant's brief, "especially in the manufacture of ice cream," and it would appear that this fact exercised an influence in the decisions below respecting all the claims of all the applications.

Disregarding for the moment the details of the reference patents, it appears that the Roth et al. patent discloses the use (in a mixture proposed to be made into ice cream) of various ingredients among which are (1) gelatin and (2) an ester similar in nature to the ester of appellant, these being introduced into the mix as separate units, and that the reissue patent to Schrader teaches the making (for use in alkaline products) of a premixed product in emulsion form, to be introduced in that form, such product being composed of various ingredients, among which ingredients are included (1) gelatin and (2) an ester similar in nature to the ester of appellant. Appellant, on his part, teaches combining gelatin and an ester in a premixture formed by introducing the ester into liquid gelatin, and then drying the premixture before introducing it into the ultimate product—in his case, ice cream.

It was, in effect, conceded by the tribunals of the Patent Office that the prior art cited made no disclosure of a dried gelatin-ester

product, but it was their view that no invention over such art was involved in drying such product.

The examiner stated, in substance, that the advantages to be obtained by the use of appellant's gelatin-ester product are revealed by the Roth et al. patent; that nothing critical over Roth et al. is shown as to the proportion of ester used; that while Schrader uses his emulsion in alkaline products, "use is not patentably material," there being nothing to prevent applicant from using his dried gelatin-ester product in an alkaline composition and his claim being to the mixture, not the use; that while the art does not disclose "a product which is essentially gelatin and the ester" the claims are not restrictive in character, but even if given a restrictive interpretation "it is not apparent wherein there is invention in associating gelatin and the esters"; that applicant furnished no evidence that any unexpected results are obtained from such a product, and, in answer to applicant's argument based upon the fact that Schrader's emulsions are prepared from a wide variety of materials, said that "In effect applicant has merely isolated two of the materials in the emulsion of the prior art and associated them to form a composite product."

The board said:

"The question is presented of whether invention is involved in premixing the dispersing agent with gelatin in suspension in water or possibly other liquid and then evaporating to dryness rather than employing a dispersing agent to assist in dispersing gelatin while suspended in water or other liquids generally. .

"After careful consideration of the record, it is our conclusion that no such new or unobvious result is accomplished as to constitute invention. From the nature of the action of dispersing agents, it is believed to be apparent beforehand that the more thoroughly a dispersing agent might be intermixed with the material which is to be dispersed, that the more effective would be its action and further, it appears obvious that by mixing the dispersing agent with the liquid gelatin mixture before evaporation such thorough mixture would be secured. It seems that no more than this relatively simple and obvious proposition is involved in this case and that the application of such principle does not involve invention.

"We have carefully considered the extended discussion presented by the brief and while we concede that the exact details of the claims are not anticipated by the prior art, it is our view that no showing amounting to patentable invention has been presented."

█ It is evident from the respective decisions below that the case was argued there by appellant upon the same basis followed in the presentation before us and that each of the arguments was fully considered. We, in turn, have given them careful analysis and feel constrained to agree that no patentable matter is present in the claims.

█ In his decision the examiner cited decisions of this court in support of the principle that the mere change of a product from a liquid to a dry state does not involve invention, the cases being In re Matthew Green and Elmer M. Jones, 48 F.2d 933, 18 C.C.P.A., Patents, 1247, and In re Bates, 88 F.2d 486, 24 C.C.P.A., Patents, 998. He also cited the case of In re Nelson, 97 F.2d 601, 25 C.C.P.A., Patents, 1294, in which it was held that claims calling for liquid ingredients were not patentable over references showing the ingredients in a dry state.

The principle seems to be well established, but appellant urges that it is not applicable here and seeks to distinguish the facts of this case from the facts appearing in the cited cases. We recognize the differences. The Roth et al. patent does not disclose a premixed product in liquid form embracing the ingredients of appellant's dried product but, as has been stated, shows the introduction of those ingredients separately in producing the ultimate composition sought, and the emulsion, or liquid product, of the Schrader patent embraces ingredients additional to those embraced in appellant's claims.

Notwithstanding these differences, however, we think the principle is applicable here. It may not be overlooked that, as pointed out below, it is common to dry gelatin, and dried gelatin is a well-known commercial product. We are unable to agree that it involved invention to dry the product created by mixing gelatin and well-known esters.

·The decision of the Board of Appeals is affirmed.

Appeal No. 4363—Serial No. 165,529

█ Four claims numbered, respectively, 7, 8, 10, and 11 are involved in this appeal, the first two being for the product and the

last two for the process. As illustrative, we quote Nos. 7 and 11:

"7. Dried gelatin containing a substance selected from the group consisting of diacid ester of a higher fatty acid glycerol and higher fatty acid monoacid ester of diethylene glycol.

"11. The process of manufacturing an improved dried gelatin product which comprises adding to gelatin liquor and incorporating therewith diacid ester of a higher fatty acid and glycerol and thereafter drying."

In this case, as in appeal No. 4262, the examiner rejected all the claims in the first instance upon the ground of aggregativeness, and this ground was overruled by the board. The examiner also rejected the claims (and this ground was sustained by the board) as presenting nothing patentable over the patents cited as prior art in appeal No. 4262, to wit: Roth et al., 2,065,398, December 22, 1936; Schrader, Re. 20,361, May 11, 1937.

Since it is agreed that the material issues respecting these claims are substantially identical with the issues respecting the claims in appeal No. 4362, supra, we need do no more than refer to our decision there.

The decision of the board affirming the rejection of the claims by the examiner is affirmed.

Appeal No. 4364—Serial No. 134,187

In this appeal are involved eight claims numbered, respectively, 1, 2, 3, 4, 7, 8, 9, and 12. All of them relate to an ice cream product and the method of preparing same, such method being the use of the modified dried gelatin product defined in the claims of companion appeals Nos. 4362 and 4363. All the claims in this appeal are illustrated by claims 1 and 2, which read as follows:

"1. As an article of manufacture, an improved ice cream product containing a small percentage of a dried admixture of gelatin and an ester of a polyhydric alcohol and a higher fatty acid being characterized by having one or more free alcoholic hydroxyl groups in the polyhydric alcohol part of the ester.

"2. The process of manufacturing an improved ice cream product which comprises adding thereto and dissolving therein a dried admixture of gelatin and an ester of a polyhydric alcohol and a higher fatty acid being characterized by having one or more free alcoholic hydroxyl groups in the polyhydric alcohol part of the ester."

Here, as in the other cases, the examiner first rejected all the claims as being aggregative, and the board reversed as to that ground. The examiner also rejected upon prior art and the board affirmed as to that ground, the reference patents cited being—Roth et al., 2,065,398, December 22, 1936; Harris et al., 2,052,028, Aug. 25, 1936.

The pertinent disclosures of the Roth et al. patent have been recited in our decision in appeal No. 4362, supra, and need not be repeated here.

With respect to the pertinent disclosures of the Harris et al. patent, the examiner said: " * * * On page 3, column 2, line 27, there is shown the use of gelatin with the esters. On page 1 of the patent there is a comprehensive disclosure of the value of using the esters conjointly with hydrophyllic colloids of which gelatin is given as an example. Harris et al. states that the mixture may be used in various edible emulsions. Ice cream is a well known edible emulsion."

The examiner then added: "Obviously the Roth process could be modified to the extent of the Harris et al. teaching, to add the gelatin and the esters together. Such procedure would appear to be desirable, moreover, in view of the fact that the esters and the gelatin function as stabilizers."

The board discussed the question in more general terms, but said: "While it is appreciated that these [the patent references] citations fail to disclose a premixed, dried gelatin and dispersing agent, it is our conclusion that the claims represent nothing more than is obvious and would be expected beforehand in employing such premixed material. It is believed to involve no more than the principle that the more thoroughly the dispersing agent is mixed with or incorporated with the material such as gelatin which is to be dispersed, that the more effective will be the dispersing action. It is our conclusion that the application of this principle in this case does not constitute invention."

We recognize the fact that patentability might reside in the use in an ultimate product, such as ice cream, of a mixture or ingredient not itself patentable if it were shown that some new and unexpected result was attained, and have considered the claims here involved with that in view.

We fail to find any showing of record which justifies the conclusion that appellant has attained any such new and unexpected result.

We, therefore, find ourselves in agreement with the decision of the board and the same is affirmed.

Affirmed.

28 C.C.P.A. (Patents)

